UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMBER SMITH, ALICE MINTZ, and
CATHERINE RAHIMIAN, individually and
on behalf of others similarly situated,

       Plaintiffs,

   -against-

YOTO, INC.,

       Defendant.

Case No. 1:25-cv-00295 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs are purchasers of a consumer product that was subject to two recalls related to a battery defect.  Dissatisfied with the terms of those recalls, and alleging that the manufacturer — Defendant Yoto, Inc. ("Yoto") — knew of the defect but concealed it from them before their purchase, Plaintiffs bring a putative class action alleging various fraud- and warranty-based claims against Yoto under New York, California, and Illinois law.  Yoto has moved to dismiss the complaint in its entirety.  For the reasons that follow, the Court GRANTS Yoto's motion.

## BACKGROUND

### I. Relevant Facts

The following facts are drawn from Plaintiffs' factual allegations in the First Amended Complaint, Dkt. 26 ("FAC"), which for purposes of this motion the Court accepts as true, as well as any documents incorporated by reference in the FAC.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Yoto is a maker of compact audio players designed for children.  FAC ¶¶ 9, 13.  One of their products, the Yoto Mini, is a $69.99 device that — without a "microphone, [a] camera, a

screen, [or] any advertising" — reads "Yoto's proprietary audio cards" to play audio files, "primarily children's stories and songs." *Id.* ¶ 13.  The Yoto Mini is powered by a lithium-ion battery, which is rechargeable through a universal USB-C cable. *Id.* ¶¶ 5, 15.

Yoto began selling the Yoto Mini in November 2021. *Id.* ¶ 14.  Yoto sells the Yoto Mini directly to consumers on its website, and through other merchants such as Amazon, Target, and toy stores throughout the country. *Id.*  Plaintiffs are purchasers of Yoto Minis.  Plaintiff Amber Smith ("Smith," or the "New York Plaintiff") bought a Yoto Mini directly from Yoto's website at some point in 2023. *Id.* ¶ 5.  Plaintiffs Alice Mintz ("Mintz," or the "Illinois Plaintiff") and Catherine Rahimian ("Rahimian," or the "California Plaintiff," and together with Mintz and Smith, "Plaintiffs") bought theirs from Amazon in September 2022 and October 2023, respectively. *Id.* ¶¶ 6-7.

On April 11, 2024, Yoto recalled the Yoto Mini (the "April Recall") because its "battery can overheat and catch fire, posing burn and fire hazards to consumers" (the "Defect"). *Id.* ¶ 22. In a statement to consumers on its website, Yoto stated that it had "received seven reports directly from Yoto customers of battery failures in Yoto Minis," and that "the issue stemmed from batteries sourced from one particular supplier," from which it had ceased all shipments. *Id.* ¶ 23.  Yoto advised consumers that it had "developed a hardware and software solution to mitigate the issue," and that it would be "providing a replacement charging cable" at no charge to "all Yoto Mini owners." *Id.* ¶¶ 22-23.  Yoto told consumers that this replacement cable — called "the Yoto Mini Smart Cable" — would safely recharge the Yoto Mini, "minimiz[ing] the risk of overheating." *Id.* ¶¶ 23, 27.  Indeed, Yoto told consumers that the Smart Cable "solves the problem entirely, with minimum disruption," and was "fully approved by" the United States Consumer Product Safety Commission ("CPSC"). *Id.* ¶ 26.  But given that the new Yoto Mini Smart Cable is not a USB-C cable, this solution also "eliminat[ed]" the Yoto

2

Mini's USB-C compatibility, thus rendering the product different than advertised and decreasing its value. *Id.* ¶ 27.

In July 2024, Yoto recalled the Yoto Mini in Australia for battery overheating issues. *Id.* ¶ 28. As part of this recall, Yoto publicly stated that "[f]ires with associated property damage have occurred" as a result of the Defect. *Id.* Rather than send Australian consumers the Smart Cable, Yoto instructed them to replace the lithium-ion battery; to Plaintiffs, this demonstrates that Yoto was "gaslighting" its customers in the United States by representing that the Smart Cable alone would resolve the Defect. *Id.* Moreover, Plaintiffs appear to conclude, based on the Australia Recall in July 2024, that Yoto "knew at the time of the April 2024 Recall that it was not sufficient to address" the Defect. *Id.* ¶ 28.

In December 2024, Yoto again recalled the Yoto Mini in the United States (the "December Recall" and, together with the April Recall, the "Recalls") after receiving additional reports of overheating even when consumers used the Smart Cable. *Id.* ¶ 29. A recall announcement on the CPSC website stated that "Yoto ha[d] received nine reports from U.S. customers and three from a UK consumer of the [Yoto Mini] overheating or melting." *Id.* ¶ 16. On its website, Yoto advised that "[i]t remains the case that no injuries or reports of overheating leading to any fires have been received." *Id.* ¶ 29. Plaintiffs contend this was "blatantly not true" in light of Yoto's previous announcement in the Australian recall. *Id.*

As part of the December Recall, Yoto advised consumers that they needed to replace the lithium-ion battery themselves, and that Yoto would send them a replacement battery kit to do so. *Id.* ¶ 30. According to step-by-step pictures Plaintiffs have included in the FAC, this replacement process involves opening the Yoto Mini, unplugging the lithium-ion battery from two connection points on the circuit board, plugging the replacement battery into the same two connection points, and then closing the Yoto Mini. *Id.* ¶ 31. To achieve this, consumers must

3

remove, and later replace, four screws, and pry open the Yoto Mini — all using tools provided by Yoto in the battery replacement kit.  *Id.*; *see also id.* at 16 n.10 (linking to demonstration video on Yoto's website).  According to Plaintiffs, this is "no easy task"; rather, it is a "complex procedure" that "reasonable, ordinary customers cannot be expected to safely perform . . . themselves," and "the average consumer is not capable of safely following [Yoto's] instructions." *Id.* ¶¶ 31-32.  Indeed, some consumers posted on Yoto's website that they were unable to replace the battery, despite "working at it for an hour." *Id.* ¶¶ 33-34.  Plaintiffs also point out that Yoto's website instructs consumers *not* to "tamper with screws or dismantle the product in any way" and warns both that the Yoto Mini's "physical elements are not serviceable in the field" and that the Yoto Mini is "not designed to be repaired by users." *Id.* at ¶¶ 37-38 (citation omitted).

Yoto's product guarantee (the "Product Guarantee") provides for "the repair or replacement (at Yoto's discretion) of [consumers'] Yoto product if it has been used in the manner intended, and is found to be defective due to faulty materials or workmanship within 2 years from the date of your original purchase." *Id.* ¶ 43.  Plaintiffs allege that seven consumers — whose complaints of battery overheating apparently led to the April Recall — received replacement Yoto Minis from Yoto. *Id.* ¶ 24.  But Yoto did not offer replacement units to Plaintiffs, or offer to refund them for their purchases, as part of the Recalls. *Id.* ¶¶ 22, 39, 44.

Plaintiffs allege that Yoto knew about the Defect even before launching the Yoto Minis, "because of pre-release testing." *Id.* ¶ 52.  Yoto also allegedly knew about the Defect after launch, but before Plaintiffs purchased their Yoto Minis, because of "warranty claim data, customer complaints to [Yoto], replacement part data, and field reports." *Id.* ¶ 53.  Though Plaintiffs contend that Yoto received a "significant" number of complaints about the Yoto Minis,

they point to just one — in April 2023 — "about the fact that the [Yoto Mini] was overheating."

*Id.* That complaint, to which Plaintiffs provide a link in the FAC, reads as follows:

**Yoto Mini will not charge, second defective device**

Has anyone else experienced their Yoto Mini stop charging? I just got my replacement player from the warranty after my original device started charging hot then quit charging and eventually would no longer turn on. I got my new Yoto Mini over the weekend and only charged it once. The battery died today and now it will not charge. We tried different USB chords (*sic*) and my husband checked the port for obstruction and even plugged in a magnetic charger connection and tried charging that way and nothing. The device will not do anything. How is it possible I received TWO defective devices?!?!? Has there been a bad production run of the Yoto Minis?

Yoto Space, https://yoto.space/questions/post/yoto-mini-will-not-charge-second-defective-device-4dNJu06JZsjfGba; *see* FAC at 33 n.19. Plaintiff further contends that Yoto "knows that for every complaint made, there is a statistical likelihood that there were many more unreported incidents," and that Yoto "made projections about the likely manifestation rate" based on the number of complaints it had received. FAC ¶ 53.

In addition, in a Q&A posted on its website (allegedly prior to the Recalls), Yoto advised consumers that the Yoto Minis "may get hot." *Id.* ¶ 58. Finally, Plaintiffs allege that Yoto Minis "suddenly went out of stock" in late 2023, and that although Yoto publicly blamed supply chain issues, in fact Yoto "was long aware of the Defect and was trying to come up with a fix without alerting or alarming customers," including by attempting to source a new batter provider. *Id.* ¶ 56. For these reasons, Plaintiffs conclude that Yoto "knew with certainty that the [D]efect would manifest and continue to plague customers who purchased the products at issue, and yet actively concealed and hid the existence of the Defect." *Id.* ¶ 59.

Plaintiffs purchased their Yoto Minis based on three material factors: first, that the product was USB-C compatible; second, that the product was backed by the Product Guarantee; and third, that the product was not defective. *Id.* ¶¶ 5-7. Without these factors, Plaintiffs would

not have purchased their Yoto Minis, or at least would not have done so "on the same terms." *Id.*; *see also id.* ¶¶ 42-43, 47.  Moreover, Plaintiffs allege that they "do[] not feel qualified" to replace the battery themselves.  *Id.* ¶¶ 5-7.  The New York Plaintiff has not attempted to do so. *Id.* ¶ 5.  The Illinois Plaintiff requested a replacement battery but did not receive one and does not allege that she followed up with Yoto concerning the matter.  *Id.* ¶ 6.  And the California Plaintiff alleges that she abandoned her attempt to replace the battery for fear of breaking her Yoto Mini.  *Id.* ¶ 7.  Accordingly, all Plaintiffs assert that they are unable to use their Yoto Minis.  *Id.* ¶¶ 5-7.

## II.    Procedural History

Plaintiffs filed this action on January 13, 2025, asserting ten causes of action against Yoto: violation of New York's Consumer Protection Act, Gen. Bus. Law § 349, *et seq.*; violation of New York's False Advertising Law, Gen. Bus. Law § 350, *et seq.* (together with the § 349 claim, the "GBL Claims"); violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); violation of Illinois's Consumer Fraud Act, § 815 ULCS 505/1, *et seq.* ("ICFA"); breach of express warranty; breach of implied warranty of merchantability; fraud; and unjust enrichment.  *See* Dkt. 1 ("Complaint" or "Compl.") at 30-43. The Complaint did not specify which state's law applied to the four non-statutory causes of action.

On April 4, 2025, Yoto moved to dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  *See* Dkts. 23-24.  Rather than oppose that motion, Plaintiffs amended the complaint on April 18, 2025.  *See generally* FAC.  The FAC added an eleventh cause of action against Yoto: violation of the Song-Beverly Consumer Warranty Act, Cal. Civ.

6

Code § 1790, *et seq.* (the "SBA"). *See id.* ¶¶ 129-43. Like the original Complaint, the FAC does not specify which state's law applies to its non-statutory claims. On May 9, 2025, Yoto filed the instant motion to dismiss the FAC for lack of standing under Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6). *See* Dkt. 33 ("Mot."); Dkt. 34 ("Br."). That motion is fully briefed. *See* Dkt. 36 ("Opp."); Dkt. 37 ("Reply").[1]

## LEGAL STANDARD

"A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). That power is confined, by Article III of the Constitution, to cases and controversies in which the plaintiff has a "personal stake." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A plaintiff establishes that stake by showing "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *TransUnion*, 594 U.S. at 423). However, a case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," such as "when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *J.L. ex rel. J.P. v. N.Y.C. Dep't of Educ.*, 324

---

[1] Yoto requested oral argument via notation on its brief. The Court declines this request, because the parties' briefing was sufficient and oral argument would not materially assist the Court. *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

F. Supp. 3d 455, 466 (S.D.N.Y. 2018) (first quoting *Tann v. Bennett*, 807 F.3d 51, 52 (2d Cir. 2015); and then quoting *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001)).

Additionally, under Rule 12(b)(6), a "complaint may be dismissed to the extent that it 'fail[s] to state a claim upon which relief can be granted.'" *DiFolco*, 622 F.3d at 110 (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)). On a motion seeking such dismissal, the Court "accept[s] the material facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 162 (2d Cir. 2025) (quoting *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 140 (2d Cir. 2023)). However, the Court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

**DISCUSSION**

## I. Standing

The Court begins, as it must, with Yoto's motion to dismiss under Rule 12(b)(1). *See Calcano*, 36 F.4th at 74 ("We begin with standing because it is a 'jurisdictional' requirement and 'must be assessed before reaching the merits.'"). Yoto contends that Plaintiffs' "entire case should be dismissed" on standing grounds, because Yoto's "free, CPSC-supervised recall and

8

repair (battery replacement) redresses Plaintiffs' alleged injuries and moots their claims."  Br. at 6.  This argument overlooks the FAC's allegations.  Even assuming that the Recalls redressed the Defect by providing consumers with a replacement battery and Smart Cable, Plaintiffs still allege an injury as a result of paying for one product (a USB-C–compatible audio player) and receiving another (a non–USB-C–compatible audio player).  *See* FAC ¶¶ 23, 27.  Plaintiffs additionally claim an injury by alleging that Yoto breached the Product Guarantee when it instituted a recall program that requires consumers to repair the Yoto Minis themselves, rather than honoring the Product Guarantee by replacing the products or refunding Plaintiffs.  *Id.* ¶¶ 22, 39, 43-44.

These additional forms of alleged injury distinguish this case from those Yoto cites, in which the recall at issue restored the benefit of the bargain that plaintiffs had expected in their initial purchase and that the at-issue defect had diminished, thus remedying (and mooting) the plaintiffs' claims entirely.  *See Tarsio v. FCA US LLC*, No. 22-cv-09993 (NSR), 2024 WL 1514211, at *3 (S.D.N.Y. Apr. 8, 2024) (granting Rule 12(b)(1) motion where plaintiff bought vehicle with faulty backup camera, but defendant "offered a NHTSA-backed recall providing [v]ehicle owners with free repairs as well as reimbursement for any prior repairs before the initiation of this lawsuit"); *Cain v. Johnson Health Tech N. Am., Inc.*, No. EDCV 23-195, 2023 WL 12154889, at *7 (C.D. Cal. June 23, 2023) (explaining that "Article III standing does not exist" where defendant "'has made reasonable efforts to correct' a defect, [and] 'has notified consumers that they will receive replacement products' through a recall program . . . absent adequate allegations how a defendant's 'recall program is insufficient'" (quoting *Charlton v. LG Energy Sol. Mich., Inc.*, No. 21-cv-02142, 2023 WL 1420726, at *5 (S.D. Cal. Jan. 31, 2023))); *Pacheko v. Ford Motor Co.*, No. 22-11927, 2023 WL 2603937, at *5 (E.D. Mich. Mar. 22, 2023) (holding that defendant's recall "remedies . . . the defect, [and] moots [p]laintiffs' overpayment claim because it 'removes the defect upon which the plaintiffs' diminished-value injury claim is

based'" (quoting *Hadley v. Chrysler Grp.*, 624 F. App'x 374, 378 (6th Cir. 2015))); *see also* Br. at 7 & n.6 (citing these and other similar cases).  Moreover, in addition to Plaintiffs' claims regarding the lack of USB-C compatibility and non-adherence to the Product Guarantee, the Recalls would not redress Plaintiffs' claims that Yoto knew about the Defect before Plaintiffs' purchases yet concealed that information from consumers.  *Id.* ¶¶ 45-59.

To be sure, and as the Court will address below, the foregoing analysis does not mean that Plaintiffs have alleged their injuries sufficiently to state a claim for relief.  But "one must not 'confuse weakness on the merits with absence of Article III standing.'" *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (alteration adopted) (quoting *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011)).  Accordingly, Yoto's motion to dismiss under Rule 12(b)(1) is denied.

## II.    The Merits

The Court turns now to the merits.  Yoto argues as follows: (1) "many of [Plaintiffs'] claims" fail because they have not alleged that "their own Yoto Mini products have overheated, caught fire, or otherwise caused any personal injury or property damage," Br. at 11; *see id.* at 11-17; (2) all of Plaintiffs' fraud-based claims fail because Plaintiffs have not sufficiently alleged pre-sale knowledge of the Defect, *id.* at 17-20; (3) Plaintiffs' breach of warranty claims fail because Plaintiffs "did not present their products to Yoto for repair or replacement under the Product Guarantee," did not provide sufficient pre-suit notice, and are not in privity with Yoto, *id.* at 20; *see id.* at 20-24; and (4) Plaintiffs' unjust enrichment claims fail because they are foreclosed by the Product Guarantee and by adequate remedies at law, *id.* at 24-26.  The Court will address these arguments in turn.

10

A.      **Failure to Allege Manifestation of Defect**

Yoto first points out that Plaintiffs have not alleged that the Yoto Minis that they purchased manifested the Defect, namely they did not overheat, catch fire, or otherwise cause any personal injury or property damage.  According to Yoto, this is fatal to all of Plaintiffs claims (i) under New York law, namely the GBL Claims (Counts I & II) and all New York common-law claims (breach of express and implied warranty (Counts VIII and IX), fraud (Count X), and unjust enrichment (Count XI)); (ii) under the SBA and breach of express and implied warranty under California law (Counts VI, VIII, and IX); and (iii) under Illinois common-law breach of express warranty (Count VI).  The Court addresses this manifestation theory under each state's law, in turn.

1.  *The New York Claims*

The Court begins, briefly, with a recitation of the elements of Plaintiffs' New York claims.  To state claim under General Business Law §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff "suffered injury as a result of the allegedly deceptive act or practice." *Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)).  "To state a claim for common law breach of warranty, a plaintiff must show '(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant.'" *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 410 (S.D.N.Y. 2015) (quoting *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999)).  "To state a claim for a breach of the implied warranty of merchantability, [a] plaintiff must allege that the product was defectively designed or manufactured, that the defect existed when the manufacturer delivered the product to the

11

purchaser, and that the defect is the proximate cause of the plaintiff's injury." *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018).  To state a claim for common-law fraud, a plaintiff must plead "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 147 (S.D.N.Y. 2021) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)).  Finally, to state a claim for unjust enrichment, a plaintiff must plead "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 608 (2d Cir. 2024) (quoting *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012)).

All these causes of action have a unifying element: They require some sort of adverse impact or injury to the plaintiff arising from the transaction.  And under New York law, where these claims are premised on the purchase of a defective product, there must be "a manifested defect for a plaintiff to recover . . . .  [T]here is no shortage in New York of case law on this point." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 429 (S.D.N.Y. 2017), *modified on other grounds*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2019).

*Ignition Switch* is instructive.  There, one plaintiff — a car dealership — purchased two General Motors vehicles that were later subject to recalls. *Id.* at 428.  Those recalls entitled all purchasers to free repairs of the defect. *Id.* at 398, 420.  The plaintiff dealership's cars never manifested the defect in question. *Id.* at 428.  Still, after the recalls were announced, the dealership attempted to have the two vehicles repaired, "but it was consistently informed that the . . . replacement parts were not available," and it ultimately "sold both cars at a loss" two years after purchasing them. *Id.*  The dealership sued the manufacturer for violation of §§ 349

12

and 350 of the General Business Law and for common-law fraudulent concealment and breach of implied warranty of merchantability. *Id.* at 429. But after surveying New York case law, the court dismissed all of the dealership's claims, notwithstanding the vehicles' apparent loss in value and the dealership's frustrated attempts to avail itself of the recall's terms, "because New York law requires a manifested defect for a plaintiff to recover on any claim[,] and [the dealership's] vehicles did not manifest any of the alleged defects." *Id.*; *see also id.* at 430 & n.20. In particular, the *Ignition Switch* court noted the important "public policy concerns" addressed by imposing the "manifest defect requirement": "[I]t would be manifestly unfair to require a manufacturer to become, in essence, an indemnifier for a loss that may never occur." *Id.* at 430 (alteration adopted) (quoting *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 16 (N.Y. App. Div. 2002)).

Here, as in *Ignition Switch*, Plaintiffs do not plead that the Defect manifested in the particular Yoto Minis that they purchased. Even in opposition to Yoto's motion to dismiss, Plaintiffs do not contend that the batteries in their Yoto Minis overheated or otherwise failed. Rather, they argue that they have "adequately alleged manifestation through" the elimination of USB-C compatibility and Yoto's failure to honor the Product Guarantee. Opp. at 9. But these are not manifestations of the Defect. That is, if the batteries in Plaintiffs' particular Yoto Minis have not overheated or melted or caught fire, then Plaintiffs' particular Yoto Minis are still USB-C compatible, they are not broken or in need of repair, and there is nothing for Yoto to replace, repair, or refund under the Product Guarantee. In other words, they are not "useless rectangular slab[s] of junk," Opp. at 11, even if certain other consumers' Yoto Minis may be. Based on the pleaded allegations, the Plaintiffs received the products they purchased.

Courts in this Circuit have found defect-based claims wanting in similar circumstances, even where plaintiffs have additionally alleged that they would not have paid as much money for

the product if they had known of a defect that may affect other products in the same line. *See In re Canon Cameras*, 237 F.R.D. 357, 359-60 (S.D.N.Y. 2006) (explaining that "proof of malfunction is a prerequisite" to claims of breach of implied warranty, unjust enrichment, and § 349, because "cameras that do not malfunction" are not unfit for their ordinary purpose, do not provide a plaintiff with "less than what he bargained for," and do not create cognizable injury as a result of deception); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99-100 (S.D.N.Y. 1997) (dismissing fraud and breach of warranty claims where plaintiff alleged that "he paid more for his vehicle than he would have had he known of the defect" in the car's child seat, but the product he purchased "perform[ed] satisfactorily and never exhibit[ed] the alleged defect"); *Hubbard v. Gen. Motors Corp.*, No. 95-cv-04362, 1996 WL 274018, at *3 (S.D.N.Y. May 22, 1996) (holding that "a [vehicle] that performs satisfactorily and never exhibits the alleged braking system defect is fit for the purposes intended and does not give rise to a breach of warranty claim or any other," and thus rejecting plaintiffs' allegation that they "were damaged at the moment they purchased their . . . vehicles, for they would not have made such a purchase had they known of the alleged defect"); *Tomassini v. FCA US LLC*, No. 14-cv-01226, 2020 WL 1938834, at *13-15 (N.D.N.Y. Apr. 22, 2020) (granting summary judgment on plaintiff's claim, under § 349, that he paid more for a vehicle than he would have if he had known of defect, where "no jury could reasonably find that [plaintiff]'s vehicle suffered from the alleged defect"); *cf. Catalano v. Grimmway Enters., Inc.*, No. 24-cv-08817 (NSR), 2026 WL 710124, at *4 (S.D.N.Y. Mar. 13, 2026) (finding that plaintiff lacked standing to bring suit for defective product subject to recall, because "even assuming that [p]laintiff made a purchase of a recalled product during the recall period," plaintiff had not pleaded the product he bought was defective, and "[t]hus, if [p]laintiff purchased carrots, got carrots, and ate the carrots without incident, then he has not suffered any economic injury"); *Braune v. Abbott Lab'ys*, 895 F. Supp. 530, 563

14

(E.D.N.Y. 1995) (holding that, even where plaintiffs' children were "exposed — *in utero* — [to drug once believed safe and later deemed harmful,] they do not possess an actionable claim, but merely have encountered the instrumentality of their future harm," and such a plaintiff who "never manifested any symptoms would, in most instances, never possess a cause of action, notwithstanding any inconsequential changes that took place on the cellular level").

Plaintiffs additionally argue that the Defect has manifested because Yoto instituted the Recalls and, in connection with them, told consumers to stop using their Yoto Minis and provided a remedy that altered the products' functionality. *See* Opp. at 9-11. The Court is unpersuaded. First, as a general matter, "courts across the country have repeatedly held that the existence of a recall alone does not establish that a particular unit of a product was defective." *Catalano*, 2026 WL 710124, at *4. Second, Plaintiffs do not provide authority demonstrating that New York law recognizes recalls and recall-based restrictions as forms of defect manifestation.

For example, Plaintiffs cite to *In re Chrysler Pacifica Fire Recall Prods. Liability Litig.*, No. 22-md-03040, 2025 WL 269166 (E.D. Mich. Jan. 21, 2025). There, the at-issue vehicles' hybrid battery contained a defect that could cause spontaneous fires and explosions, even while the cars were not running. *Id.* at *1. The court held that certain plaintiffs had adequately pleaded manifestation by alleging that the manufacturer's recall had restricted their "effective use of the plug-in hybrid charge feature of their vehicles." *Id.* at *5 (quoting *In re Chrysler Pacifica Fire Recall Prods. Liability Litig.*, 706 F. Supp. 3d 746, 782 (E.D. Mich. 2023)). Thus, the court denied the defendant's motion to dismiss the plaintiffs' fraud claims under Georgia, Minnesota, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, and Wisconsin common law. *Id.* The case does not evaluate New York law and, more importantly, cites no authority to support its holding. Plaintiffs also cite to *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d

921 (E.D. Mich. 2022), which involves a similar fact pattern and holding as *Chrysler Pacifica*, and which does concern a claim under New York law; but this case, too, cites no authority in support of its holding that recall restrictions constitute defect manifestation. *Id.* at 968-69. And Plaintiffs' other two cases on this point — *Kavon v. BMW of N. Am., LLC*, 605 F. Supp. 3d 622 (D.N.J. 2022) and *Gutierrez v. Carmax Auto Superstores Cal.*, 248 Cal. Rptr. 3d 61 (Cal. Ct. App. 2018) — concern only California law.

Finally, Plaintiffs cite *Ignition Switch* and *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1335 (S.D. Fla. 2016) in arguing that they need not allege property damage or economic loss to plead manifestation. *See* Opp. at 12-13. Those cases do not aid Plaintiffs. In *Ignition Switch*, the court held that one plaintiff had adequately pleaded manifestation of an airbag defect (namely, that the airbags did not deploy on impact) by alleging that her vehicle's "airbag light came on," which was "precisely how the defect would manifest itself short of the airbags not deploying in an accident." *Ignition Switch*, 357 F. Supp. 3d at 459 n.30. At most, that aspect of *Ignition Switch* stands for the proposition that a plaintiff need not plead a complete manifestation of a defect (especially when physical injury is likely) when a lesser manifestation will do — but Plaintiffs here do not plead even a lesser manifestation of the Defect, such as that their Yoto Minis felt warm to the touch while charging. In *Takata*, another airbag case, the plaintiffs did not allege a manifestation of the defect in their vehicles, but they did allege that the defendant used an inherently dangerous propellant in its airbag system, one consciously avoided by other manufacturers because it was notoriously "prone to instability and explosions." *Takata*, 193 F. Supp. 3d at 1335. Plaintiffs do not allege that lithium batteries (used in Yoto Minis) are inherently dangerous or consciously avoided in the industry.

Accordingly, because New York law requires a manifestation of the alleged defect, and because Plaintiffs have neither adequately pleaded manifestation nor provided authority

16

supporting their theory that New York law recognizes alternate forms of manifestation, Plaintiffs' claims under New York law are dismissed.

### 2. The California Claims

Yoto also applies its manifestation argument to Plaintiffs' warranty-based claims under California law.  As a preliminary matter, Plaintiffs have brought express and implied warranty claims against Yoto under the Song Beverly Act ("SBA"), *see* FAC ¶¶ 129-43, but they have also brought those claims as separate causes of action without specifying their statutory or other legal bases, *see id.* ¶¶ 150-57 (express warranty); ¶¶ 158-74 (implied warranty).  However, because Plaintiffs have cited to warranty provisions in the California Commercial Code in their opposition to Yoto's motion to dismiss, *see* Opp. at 18, 20, 26, the Court construes these unspecified claims as brought under the California Commercial Code.  *See T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 874 n.6 (N.D. Cal. 2015) (noting that unspecified warranty claims could be brought under multiple laws in California, but construing them as brought under California Commercial Code); *accord Nevada Fleet LLC v. Fedex Corp.*, No. 17-cv-01732, 2022 WL 891245, at *15 (E.D. Cal. Mar. 25, 2022).

Under the California Commercial Code, a plaintiff suing for breach of an express warranty "must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury."  *Anderberg v. Hain Celestial Grp., Inc.*, 652 F. Supp. 3d 1232, 1243 (S.D. Cal. 2023) (quoting *Williams v. Beechnut Nutrition Corp.*, 229 Cal. Rptr. 605, 608 (Cal. Ct. App. 1986)).  To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that the "products are not 'fit for the ordinary purposes for which such good[s] are used' or do not '[c]onform to the promises or affirmations of fact made on the container or label if any.'"  *Scott v. Saraya USA, Inc.*, 675 F. Supp. 3d 1040, 1050 (N.D. Cal. 2023) (first quoting Cal. Com. Code § 2314(2)(c); and then

quoting *id.* § 2314(2)(f)).  "[T]he core test of merchantability is fitness for the ordinary purpose

for which such goods are used."  *Reynolds v. EzriCare LLC*, 700 F. Supp. 3d 830, 845 (N.D. Cal.

2023) (quoting *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 289 (Cal. Ct. App. 2009)).

The SBA provides consumers with similar causes of action and "supplements, rather than

supersedes, the provisions of the California Uniform Commercial Code."  *Carver v. Volkswagen*

*Grp. of Am., Inc.*, 328 Cal. Rptr. 3d 527, 537 (Cal. Ct. App. 2024).  Thus, breach of warranty

claims under the SBA "require the plaintiffs to plead successfully a breach of state warranty

law."  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009); *see Baltazar v. Apple, Inc.*,

No. CV-10-03231, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011) (dismissing SBA claim

because "[p]laintiffs have failed to state a claim for breach of an express or an implied

warranty").

The same basic premise of defect manifestation that the Court applied to Plaintiffs' New

York claims applies to their California claims, with one important difference.  In California,

"breach of warranty does not require proof the product has malfunctioned but only that it

contains an inherent defect which is substantially certain to result in malfunction during the

useful life of the product."  *Hicks v. Kaufman & Broad Home Corp.*, 107 Cal. Rptr. 2d 761, 768

(Cal. Ct. App. 2001) (discussing breach of express and implied warranty).  Thus, "[a]t the

pleading stage, plaintiffs must allege either the manifestation of the defect in their product or a

substantial certainty of manifestation."  *Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp.

3d 989, 1020-21 (C.D. Cal. 2024) (quoting *Sims v. Kia Motors Am., Inc.*, No. 13-1791, 2014 WL

12558251, at *3 (C.D. Cal. Oct. 8, 2014)); *see also Siqueiros v. Gen. Motors LLC*, 676 F. Supp.

3d 776, 804 (N.D. Cal. 2023) ("[J]ust because 'the law does not require a current malfunction to

prove breach of warranty does not mean it should not require proof of *any* malfunction, present

or future.  A breach of warranty cannot result if the product operates as it was intended to and

18

does not malfunction during its useful life.'" (quoting *Am. Honda Motor Co. v. Super. Ct.*, 132 Cal. Rptr. 3d 91, 98 (Cal. Ct. App. 2011))).  This rule applies, generally, to warranty claims under both the California Commercial Code and the SBA.  *Hawkins*, 729 F. Supp. 3d at 1021-22.

To be sure, there appears to be some ambiguity in California law over whether this "substantial certainty" standard applies to consumer goods like the Yoto Mini — as opposed to objects intended to have longer useful lives, like house foundations — and "multiple district courts have concluded that it does not." *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 851 (N.D. Cal. 2012) (collecting cases); *accord Ocampo v. Apple Inc.*, No. 20-cv-05857, 2022 WL 767614, at *6 (N.D. Cal. Mar. 14, 2022).  If the "substantial certainty" standard does not apply to the Yoto Mini, then the Court's inquiry ends here because, for the reasons discussed in the context of the New York claims, Plaintiffs have not pleaded manifestation of the Defect as necessary under California law.  *See, e.g.*, *McGee v. Mercedes-Benz USA, LLC*, 612 F. Supp. 3d 1051, 1059 (S.D. Cal. 2020) (granting summary judgment to defendant on SBA express warranty claim where "[p]laintiff present[ed] no evidence that the passenger airbag [was] actually defective" and did "not present[] any other problems that have substantially impaired the vehicle's use, value, or safety"); *Kavon*, 605 F. Supp. 3d at 635-36 (dismissing SBA express warranty claim where manufacturer recalled vehicles and instructed owners not to use them, and explaining that "[p]laintiffs cannot state a claim under the SBA solely because (1) a recall was issued, (2) there is a possible defect, or (3) some vehicles of the same model have a defect; instead, [p]laintiffs must allege that the defect was present in their vehicles"); *cf. Hawkins*, 729 F. Supp. 3d at 1022 (holding that named plaintiff adequately pleaded manifestation for purposes of implied warranty claim by alleging "his crankset broke while he was riding his bicycle," but that all other plaintiffs had "failed to allege any sign of separation or substantial certainty of separation in their current cranksets").

Assuming *Hicks*'s substantial certainty standard does apply to this context, however, Plaintiffs have also failed to plead facts to meet this standard.  The FAC alleges that there were "nine reports" of battery failures in the Yoto Mini as of the December Recall, out of the 251,165 units of the Yoto Mini sold in the United States that were recalled.  FAC ¶¶ 16-17.  In other words, Plaintiffs allege a 0.00358% manifestation rate.  California courts have dismissed breach of warranty claims for failure to plead substantial certainty of manifestation even where the pleaded defect manifestation rate is much higher.  *See, e.g.*, *Zhang v. Ikea N. Am. Servs., LLC*, No. 24-cv-01641, 2025 WL 1791067, at *3 (N.D. Cal. Feb. 28, 2025) (dismissing implied warranty claim based on defective bedframe slats because "given the very small percentage of reported incidents" — plaintiff "cite[d] only 25 customer reviews" "[o]ut of the 'hundreds of thousands' of [products] purchased" — there was no substantial certainty of manifestation); *Mathison v. Bumbo*, No. SA CV08-0369, 2008 WL 8797937, at *10 (C.D. Cal. Aug. 18, 2008) (dismissing implied warranty claim where plaintiffs cited "28 reported cases where the [product] did malfunction out of one million seats sold," which "hardly shows a 'substantial certainty' of malfunction"); *cf. Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-cv-01298, 2023 WL 1812157, at , *2, *6-7 (C.D. Cal. Jan. 25, 2023) (decertifying class seeking to bring SBA implied warranty claim, because no reasonable trier of fact could find substantial certainty of manifestation where "between 2.45% and 9.54%" of class plaintiffs had paid out of pocket for defect-related repairs); *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 534-35 (C.D. Cal. 2012) (suggesting that defect rate below ten percent makes substantial certainty "unclear" for purposes of breach of express warranty claim).

Moreover, just as the Court found that New York law does not support Plaintiffs' theory of manifestation-by-recall-restriction, *see supra* Section II.A.1, Plaintiffs have not provided sufficient California authority to support the theory, either.  Plaintiffs cite *Kavon*, *see* Opp. at 10,

20

a New Jersey case, in which the court explained that "there is . . . case law interpreting the SBA that suggests that if the plaintiff alleges that their 'use of the [product] was restricted or otherwise affected by the existence of the safety recall,' this may establish that the [product] was unfit for ordinary purposes" sufficient to support an SBA violation claim. *Kavon*, 605 F. Supp. 3d at 637 n.14 (quoting *Gutierrez*, 248 Cal. Rptr. 3d at 75-76). Thus, that court held that the defendant in that case, a manufacturer of hybrid vehicles, had "undermined the very basis of the consumer's bargain and rendered the [vehicle] unfit for its intended use" by issuing a recall and "warning owners not to charge the battery and to drive using only the gasoline engine," and therefore that plaintiffs had adequately pleaded a claim for breach of implied warranty under the SBA. *Id.* But while the *Kavon* court alluded to California "case law interpreting the SBA," *id.*, it cited just two cases: *Gutierrez* and *McGee*. The Court finds those cases insufficient bases to interpret the SBA in the manner suggested by Plaintiff (and by *Kavon*).

In *Gutierrez*, the court held that the plaintiff had failed to state a claim for breach of implied warranty under the SBA because (1) she had conclusorily alleged that a stop lamp switch recall had rendered her vehicle "virtually useless"; (2) "the existence of a safety recall relating to [the] stop lamp switch, by itself, is insufficient to state facts showing that the vehicle was unfit for ordinary purposes"; and (3) the plaintiff did not allege that her own stop lamp switch "was actually defective or failed to function before it was replaced." *Gutierrez*, 248 Cal. Rptr. 3d at 75. Rather than support Plaintiff's position, that holding conforms to the Court's conclusion that California law does not support that a defect is manifested simply by recall restrictions. The comment by the California Court of Appeal that the plaintiff failed to explain how her "use of the vehicle was restricted or otherwise affected by" the recall, such as by alleging that she was reluctant to drive it due to safety concerns, was dicta, not part of the holding in the case. *Id.* at 75-76. In *McGee*, while the court looked to whether the plaintiff stopped using the vehicle due

21

to the recall, it nonetheless rejected the plaintiff's alleged "los[s] [of] confidence in the safety of the vehicle due to the . . . [r]ecall" as a basis for a breach of implied warranty claim, because the plaintiff had "provide[d] no support for the proposition that a remote fear or expectation of failure is sufficient to establish non-merchantability." *McGee*, 612 F. Supp. 3d at 1061 (quoting *Am. Suzuki Motor Corp. v. Superior Ct.*, 44 Cal. Rptr. 2d 526, 530 (Cal. Ct. App. 1995)). That holding, too, supports the Court's conclusion here that Plaintiffs cannot plead manifestation of the Defect in their Yoto Minis merely by alleging that the Recalls placed restrictions on their use of the products.

The Court is therefore unpersuaded that these cases support Plaintiffs' position on defect manifestation here, and respectfully disagrees with the *Kavon* court's interpretation of California SBA implied warranty law in reliance on them. Rather, the balance of California case law reviewed by this Court indicates California's manifestation requirement is the same as New York's — with the exception that a plaintiff may also plead substantial certainty of manifestation, which Plaintiffs have not sufficiently done. Therefore, the lack of Defect manifestation discussed above defeats the California Plaintiffs' claims for breach of express warranty and breach of implied warranty of merchantability under the California Commercial Code and the SBA, and those claims are dismissed.

The Court notes, as a related matter, that Plaintiffs have also alleged that Yoto violated § 1793.2 of the SBA by (1) failing to maintain service and repair facilities in California and (2) failing to repair the Yoto Minis itself. FAC ¶ 142. The purpose of this provision of the SBA is "to make available to buyers service and repair facilities at which goods can be repaired to conform to any express warranties provided by the manufacturer." *Cummins, Inc. v. Superior Court*, 115 P.3d 98, 100 (Cal. 2005); *accord Kodjanian v. Mercedes-Benz USA, LLC*, No. CV 21-8836, 2022 WL 1515683, at *2 (C.D. Cal. Mar. 17, 2022). It follows that, where there is no

22

breach of express warranty, there is no cause of action under § 1793.2. *See* FAC ¶ 142 (stating that SBA § 1793.2 provides "three options" to manufacturers "[i]f a warranted product requires repair," and alleging that "[n]one of those things happened in connection with the defective products at issue here"); *see also* Cal. Civ. Code § 1793.2(c) (providing options for repair of "nonconforming goods"); *Park City Servs., Inc. v. Ford Motor Co.*, 50 Cal. Rptr. 3d 373, 378 (Cal. Ct. App. 2006) ("In the event of a breach of an express warranty, the Song–Beverly Act requires a manufacturer to repair, replace, or reimburse the buyer for the nonconforming goods.").

Yoto has not specifically moved to dismiss this aspect of Plaintiffs' SBA claim, but it has moved to dismiss the FAC in its entirety, *see* Br. at 26, and Plaintiffs' only mention of § 1793.2 in opposition is to say that it could provide a basis to support Plaintiffs' UCL claims, Opp. at 16-17. Accordingly, because the Court has dismissed Plaintiffs' claim for breach of express warranty under the California Commercial Code and the SBA, the Court dismisses Plaintiffs' claim under § 1793.2 of the SBA.

### 3. The Illinois Law Claim

Finally, Yoto applies its defect manifestation argument to Plaintiffs' claim for breach of express warranty under Illinois law. There, such a claim requires that a plaintiff allege "(1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was the basis of the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650, 666 (N.D. Ill. 2024) (quoting *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 724 (N.D. Ill. 2021)). However, in Illinois, "[t]he language of an express warranty dictates the rights and obligations of both the manufacturer and consumer; therefore, under Illinois law, 'express warranties of limited duration cover only defects that become apparent during the warranty period.'" *Darne v. Ford Motor*

*Co.*, No. 13 C 03594, 2015 WL 9259455, at *4 (N.D. Ill. Dec. 18, 2015) (quoting *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. Ct. 2005)).

Yoto contends that the Illinois Plaintiff's express warranty claim fails because her coverage period under the Product Guarantee has elapsed without any manifestation of the Defect in her Yoto Mini. Br. at 16-17. Indeed, the Product Guarantee is valid for two years from the date of purchase, FAC ¶ 43, the Illinois Plaintiff purchased her Yoto Mini in September 2022, *id.* ¶ 6, and this action was filed in January 2025, *see* Compl. Plaintiffs do not dispute that Illinois requires an express warranty claim to be made before expiration of the warranty, but argue instead that the Defect did manifest in that time. *See* Opp. at 13 (arguing that Defect manifested through announcement of Recalls and failure to offer replacements under Product Guarantee). But in so arguing, Plaintiffs rely on theories the Court has rejected above, and they provide no supporting Illinois law. The Illinois requirement of a timely defect manifestation is, in effect, the same manifestation requirement as in New York and California law: If a defect must manifest within the warranty period to permit an express warranty claim, that necessarily means that Illinois law requires manifestation of the defect. For all the reasons discussed above in connection with Plaintiffs' New York and California claims, the FAC does not allege that the Defect manifested in the Illinois Plaintiff's Yoto Mini at all, let alone within the warranty period, and the pleadings themselves additionally establish that the warranty period has ended. Therefore, Plaintiffs' breach of express warranty claim under Illinois law is dismissed as well.

### B.    Failure to Allege Pre-Sale Knowledge

Yoto next argues that Plaintiffs have failed to allege pre-sale knowledge of the Defect, such that Plaintiffs' "fraud-based" claims must be dismissed. Br. at 20; *see id.* at 17-19. On reply, Yoto clarifies that this argument applies to "Plaintiffs' common law fraud claims under the laws of all three states, and their CLRA, UCL (fraud prong), FAL, and ICFA claims." Reply at

12 n.4.[2]  Plaintiffs counter that Rule 9's heightened pleading standard has been met by their specific allegations in the FAC.  Opp. 13-16.  The Court agrees with Yoto that these claims must be dismissed.

Rule 9 requires that plaintiffs alleging fraud "state with particularity the circumstances constituting fraud," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. 9(b).  Even so, plaintiffs alleging fraud "still must 'plead the factual basis which gives rise to a strong inference of fraudulent intent,'" which they "establish[] either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (first quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991); and then quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).  An inference of fraud "is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015).  Yoto is correct that this heightened pleading standard applies not only to Plaintiffs' common-law fraud claims, but also to their CLRA, UCL, FAL, and ICFA claims.  *See Carey v. J.A.K.'s Puppies, Inc.*, 763 F. Supp. 3d 952, 990 (C.D. Cal. 2025) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009))); *Rael v. New York & Co.*, No. 16-cv-00369, 2016 WL 7655247, at *5 (S.D. Cal. Dec. 28, 2016) ("Rule 9(b) applies to claims under the FAL as well."); *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 596 n.80 (7th Cir. 2017) ("IFCA claims are evaluated under Rule 9(b)'s heightened pleading standard.").  The

---

[2] Yoto's Reply is unpaginated.  Page numbers cited here refer to the page number of the pdf document.

Court will address Yoto's argument under the law of each state, beginning with the California claims.

    *1.   The California Claims*

    As Yoto's argument suggests, claims brought in California against a seller of defective products for fraud and for violations of the CLRA, UCL, and FAL all must include an allegation that the seller knew of the defect at the time of the transaction.  This is clear from the elements of each of these claims.  "The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  *Kearns*, 567 F.3d at 1126 (emphasis omitted) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 64 Cal. Rptr. 2d 843, 857 (Cal. Ct. App. 1997)).  "To state a claim under the CLRA, a plaintiff generally must allege a misrepresentation, reliance, and damages," *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020), and thus "[a] plaintiff must sufficiently allege a defendant's knowledge at the time of sale in order to state a CLRA claim under an affirmative misrepresentation theory just as a plaintiff must do so in order to state a CLRA claim under a fraudulent omission theory," *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-cv-02941, 2017 WL 86033, at *7 (N.D. Cal. Jan. 10, 2017).[3]  The UCL "prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices."  *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1136 (S.D. Cal. 2012).  For claims brought under the third prong, "California courts are

---

[3] Plaintiffs bring their CLRA claims under both theories.  *See* FAC ¶ 115 (alleging violations of Cal. Civ. Code §§ 1770(a)(5), (7), and (9)).  *See also* Cal. Civ. Code § 1770(a)(5) (prohibiting "[r]epresenting that goods . . . have . . . characteristics . . . that they do not have); *id.* § 1770(a)(7) (prohibiting "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another"); *id.* § 1770(a)(9) (prohibiting "[a]dvertising goods . . . with intent not to sell them as advertised").

unwilling to impose liability . . . where a defendant lacked knowledge of the facts that rendered its representations misleading at the time it made such statements." *In re Univ. of S. Cal. Tuition & Fees COVID-19 Refund Litig.*, No. CV 20-4066, 2021 WL 3560783, at \*10 (C.D. Cal. Aug. 6, 2021). To state a claim under the FAL, a plaintiff must allege "(1) [a]n untrue or misleading statement; (2) [w]hich is known, or reasonably should be known, to be untrue or misleading; and (3) [i]s made to dispose of goods, perform services, or induce obligations." *Royal Holdings Techs. Corp. v. FLIR Sys., Inc.*, No. 20-cv-09015, 2021 WL 945246, at \*6 (C.D. Cal. Jan. 8, 2021) (quoting *Arakelian v. Mercedez-Benz USA, LLC*, No. CV 17-06240, 2018 WL 6422649, at \*4 (C.D. Cal. June 4, 2018)). Thus, to state a claim for relief under these theories of liability, Plaintiffs must allege that Yoto knew, or reasonably should have known, of the Defect before they purchased their Yoto Minis, and they must do so in satisfaction of Rule 9's pleading standards.

The Ninth Circuit's opinion in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) is instructive on California's application of Rule 9 to product-defect cases sounding in fraud. There, the plaintiffs sued under the CLRA, the UCL, and California-common-law fraud over defective laptops. *Id.* at 1145-46. They alleged that the manufacturer knew of the defect before their purchases "because it had access to the aggregate information and data regarding the risk of overheating," and because of "several customer complaints." *Id.* at 1146 (internal quotation marks omitted). The Ninth Circuit found these allegations "merely conclusory." *Id.* at 1147. In particular, the court found the "aggregate information and data" allegation was too speculative and "d[id] not suggest how any tests or information could have alerted [defendant] to the defect." *Id.* Moreover, the *Wilson* court pointed to other cases in which plaintiffs had successfully pleaded pre-sale knowledge by, for example, alleging that the manufacturer had monitored a consumer reporting agency website and seen higher-than-usual "reports of [its]

defective" product there, or by alleging that the manufacturer had specified certain technical standards to which its product conformed, with those standards "requir[ing] multiple [specific] tests" that would have revealed the defect in question. *Id.* at 1146 (first quoting *Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009); and then citing *Kowalsky v. Hewlett-Packard*, No. 10-cv-02176, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011)).

The FAC here is more akin to *Wilson* than the cases *Wilson* distinguished. It is true, as Plaintiffs argue, that the FAC contains "two full pages" of allegations concerning Yoto's pre-sale knowledge. Opp. at 14 (citing FAC ¶¶ 51-59). But those two pages contain very little factual content. The FAC alleges that Yoto knew about the Defect even before the Yoto Minis came to market through "pre-release testing," and that Yoto knew about the Defect before Plaintiffs' purchases through "warranty claim data, customer complaints to Defendant, replacement part data, and field reports." FAC ¶¶ 52-53. The FAC also alleges that consumers made a "significant" number of complaints about the Defect, which indicated "a systemic problem with" the battery. *Id.* ¶ 54. As in *Wilson*, however, these allegations are conclusory.[4]

The allegations as to testing, data, and reports do not include any description of what Yoto's pre-release testing was or why it would have put Yoto on notice of the Defect; likewise, Plaintiffs fail to elaborate on what warranty data, replacement data, or field reports Yoto allegedly conducted or received that would have provided this notice. California courts have dismissed defect-related fraud-based claims for similar deficiencies. *See, e.g.*, *Mossazadeh v.*

---

[4] The FAC also speculates that Yoto had pre-sale knowledge of the Defect because, when the Yoto Minis "went out of stock, seemingly around the entire globe" in "late 2023," Yoto told customers that it was a mere supply issue, and, in fact, Yoto "was trying to come up with a fix [for the Defect] without alerting or alarming customers." FAC ¶ 56. The FAC alleges no factual basis to support this conjecture.

28

*Monahan Prods., LLC*, No. CV 25-04862, 2025 WL 3211457, at *4-5 (C.D. Cal. Oct. 9, 2025) (finding "allegations of testing and other internal data . . . too conclusory to imply actual [pre-sale] knowledge" for purposes of CLRA and fraud claims, and noting that "[s]everal courts have found that generic references to 'testing' or internal data, without factual context, do not plausibly establish pre-sale knowledge"); *Williams v. Tesla, Inc.*, No. 20-cv-08208, 2022 WL 899847, at *4-5 (N.D. Cal. Mar. 28, 2022) (finding "vague allegations of 'pre-sale design and testing'" insufficient to plead pre-sale knowledge for purposes of CLRA, UCL-fraud, and FAL claims, and noting that "to create a plausible inference, a plaintiff might allege *how* pre-sale testing would have alerted a defendant to the alleged defect"); *Cadena v. Am. Honda Motor Co.*, No. CV 18-4007, 2019 WL 3059931, at *12-13 (C.D. Cal. May 29, 2019) (finding allegation of pre-sale knowledge through "Field Technical Reports" insufficient to plead CLRA claim where unsupported by "any level of specificity [as to] what was allegedly actually reported to" defendant).

Nor do Plaintiffs' customer-complaint allegations, as pleaded, suffice to establish pre-sale knowledge. Indeed, Plaintiffs allege that Yoto received many customer complaints, but nearly all of the specific complaints quoted in the FAC concern consumers' frustrations with Yoto's Recalls in 2024, not with overheating Yoto Minis prior to Plaintiffs' purchases in 2022 and 2023. *See* FAC ¶ 25 ("Consumers were swift in telling [Yoto] that its proffered solution was inadequate."); *id.* ¶¶ 25-26, 33-34 (quoting from consumer complaints about Recalls' terms); *id.* ¶¶ 5-7 (alleging Plaintiffs purchased their Yoto Minis in 2023, September 2022, and October 2023). And while the FAC alleges that Yoto "monitored and would have known about consumer complaints to the CPSC," *id.* ¶ 55, Plaintiffs do not allege that any such complaints were made. In fact, Plaintiffs specifically plead just one customer complaint about the Yoto Mini overheating, from April 2023. *See id.* ¶ 54. But one specifically pleaded customer complaint, on

its own, is well below what California courts typically require to support an allegation of pre-sale knowledge of a defect. *See, e.g.*, *Mossazadeh*, 2025 WL 3211457, at *4 (finding that "[t]hree online reviews are plainly insufficient" to establish pre-sale knowledge for CLRA and common-law fraud claims); *Sheets v. Lippert Components, Inc.*, No. 20-cv-01683, 2021 WL 4951899, at *6 (E.D. Cal. Oct. 25, 2021) (finding that plaintiff's "allegations of online complaints d[id] not establish defendants knew of the alleged defect" for purposes of CLRA claim where plaintiff "d[id] not specify how many consumer complaints were made" and thus "d[id] not allege a sufficient quantity of complaints to demonstrate defendants were on notice"); *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) (finding that "[f]orty-five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints" sufficient to establish pre-sale knowledge to support claims under UCL, CLRA, and common-law fraud). *Cf. Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026, 1028 (9th Cir. 2017) (finding pre-sale knowledge adequately pleaded for CLRA and UCL claims where plaintiff alleged defendant received "as many as 40 or 50 different consumer complaints, . . . which was an unusually high number of complaints" early in the life of the product, and where plaintiff alleged that this "high volume of calls led to the creation of a [new] customer relations service department" to handle those complaints (internal quotation marks omitted)); *Obertman v. Electrolux Home Care Prods., Inc.*, 482 F. Supp. 3d 1017, 1022-23 (E.D. Cal. 2020) (finding pre-sale knowledge adequately pleaded for CLRA, UCL, and FAL claims where plaintiff cited multiple specific complaints "submitted directly to defendant's own website" that "confirm[ed] the customer spoke with an employee of defendant over the phone concerning the defect" and "allege[d] specific examples of a significant number of similar complaints about the issue on the websites of the products' top retailers").

Although Plaintiffs argue that there are "numerous decisions" permitting "general allegations of pre-sale testing and warranty claims" at the pleading stage, Opp. at 14, they cite just two: *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373 (D.N.J. 2014), and *Banh v. Am. Honda Motor Co., Inc.*, No. 19-cv-05984, 2019 WL 8683361 (C.D. Cal. Dec. 17, 2019). Both cases are inapposite. In *Banh*, the plaintiffs provided far more detail than Plaintiffs do here about the defendant's pre-release testing, warranty data, and customer complaints, and thus *Banh* serves only to magnify the deficiencies of Plaintiffs' pleadings. *See* Complaint ¶¶ 203-20, *Banh v. Am. Honda Motor Co.*, No. 19-cv-05984, 2019 WL 13093548 (C.D. Cal. July 11, 2019) (describing the pre-release testing defendant performed and why it would have provided notice of defect; quoting customer complaints about defect from multiple dated warranty claims; and quoting dated customer complaints about defect submitted directly to defendant and defendant's dealers, posted on internet forums, and posted on consumer-protection agency database). Moreover, the plaintiffs in *Banh* additionally alleged that one of the defendant's representatives had "publicly acknowledged" the defect in question. *Banh*, 2019 WL 8683361, at *7. There is no such allegation here.[5] In *Gray*, the plaintiffs alleged that the defendant was aware of the defect "based upon its appearance in" a technical services bulletin that the defendant itself issued. *Gray*, 22 F. Supp. 3d at 383; *see also* Complaint ¶¶ 7-13, *Gray v. BMW of N. Am., LLC*, 2013 WL 10162649 (D.N.J. Oct. 4, 2013) (quoting from technical services bulletin manufacturer sent to dealerships describing defect and outlining required steps to repair it). Plaintiffs do not offer any similarly concrete allegations regarding Yoto's pre-sale knowledge here. Therefore, these cases do not aid Plaintiffs.

---

[5] The FAC alleges that Yoto publicly acknowledged that the Yoto Minis "may get hot" in a Q&A on its website. FAC ¶ 58; *see also id.* at 34 n.22 (providing links to archived Yoto webpage). But the Q&A Plaintiff has provided is from 2024, after Plaintiffs' purchases. Yoto notes this problem, *see* Br. at 3 n.2, and Plaintiffs offer no rebuttal.

Plaintiffs also contend that Yoto's motion to dismiss their UCL claims under only the fraud prong should be rejected because the FAC "alleges a claim under all three prongs of the UCL," FAC ¶ 104, and because "Rule 12(b)(6) does not 'permit piecemeal dismissals of *parts* of claims,'" Opp. at 17 (quoting *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 283 n.6 (S.D.N.Y. 2024)); *see also id.* (citing *Franklin v. Midwest Recovery Sys., LLC*, No. 18-cv-02085, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020)).   But partial dismissal refers to the practice of dismissing alternative theories of liability for the same claim.  *See Martin*, 723 F. Supp. 3d at 283 n.6 (declining to address "alternative theory of vicarious liability" having found direct liability sufficiently pleaded); *Franklin*, 2020 WL 3213676, at *1 (denying plaintiff's motion to dismiss UCL unlawful-prong claim as premised on certain underlying violations but not on others).  That is not happening here.  In California, "[e]ach prong of the UCL is a separate and distinct theory of liability," and therefore each prong "offers an independent basis for relief." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Accordingly, "[a] party may move to dismiss specific 'prongs' of a UCL claim, without moving to dismiss the claim in its entirety."  *Cal. State Employees Ass'n v. Bogart*, No. 14-cv-02494, 2015 WL 461646, at *4 (E.D. Cal. Feb. 3, 2015); *see also, e.g.*, *Hornby v. Gen. Motors, LLC*, No. 24-cv-00079, 2024 WL 3907050, at *4 (S.D. Cal. Aug. 22, 2024) (noting that plaintiff alleged UCL violation under all three prongs, and granting motion to dismiss UCL claim as to fraudulent prong only); *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047-53 (S.D. Cal. 2018) (dismissing UCL claims under fraudulent and unlawful prongs, but finding that plaintiff stated claim under unfair prong); *Satmodo, LLC v. Whenever Commc'ns, LLC*, No. 17-cv-00192, 2017 WL 1365839, at *7-8 (S.D. Cal. Apr. 14, 2017) (dismissing UCL claim under "unlawful" prong but denying motion to dismiss "independent claim under the 'unfair' prong").  Therefore,

Yoto may properly move to dismiss Plaintiffs' claim under the fraud prong of the UCL, and the Court may properly grant that motion.

For all these reasons, Plaintiffs have failed to allege sufficient facts to establish that Yoto knew of the Defect prior to the Plaintiffs' purchases, and their claims under the CLRA, the UCL (insofar as it relies on the fraud prong), the FAL, and California common-law fraud must be dismissed.

As to the remaining two prongs of Plaintiffs' UCL claim, to satisfy the "unlawful" prong of the UCL, a plaintiff must allege that the defendant's conduct was "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (quoting *Saunders v. Super. Ct.*, 33 Cal. Rptr. 2d 438, 441 (Cal. Ct. App. 1994)).  Because Plaintiffs' other California causes of action have been dismissed, there is no basis to support their UCL-unlawful claim, and that claim must also be dismissed.  *See, e.g.*, *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 982 (N.D. Cal. 2019) ("Because [plaintiff]'s other claims against [defendant] have been dismissed, he is unable to state a claim under the 'unlawful' prong of the UCL.").  As a result, Plaintiffs also cannot maintain a UCL-unfair claim, because "where conduct that comprises the UCL fraudulent or unlawful prongs is the same conduct as the unfair prong, 'the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.'"  *In re Plum Baby Food Litig.*, No. 21-CV-00913, 2024 WL 1354447, at *7 (N.D. Cal. Mar. 28, 2024) (quoting *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1104-05 (N.D. Cal. 2017)), *aff'd*, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025) (mem.); *see In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009) (dismissing UCL-unfair claim that "sound[ed] entirely in fraud" because court had already dismissed plaintiffs' fraud claim), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (mem.).  *See also* FAC ¶¶ 105-06

(alleging that Yoto "engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable customers," that Yoto's "conduct also constitutes 'unfair' business acts and practices within the meaning of the UCL," and that Yoto's "violation of consumer protection and unfair competition laws resulted in harm to consumers"). Accordingly, although Yoto did not specifically move to dismiss Plaintiffs' UCL claims under the unlawful or unfair prongs, those claims must necessarily be dismissed, as Plaintiffs appear to concede. *See* Opp. at 16-17 ("[S]o long as the Court finds that another California-based cause of action survives the motion to dismiss, then the UCL claim should survive too."); *see also Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim[.]").

### 2. *The New York and Illinois Claims*

New York and Illinois common law also contain a knowledge element for fraud claims, *see Mason*, 515 F. Supp. 3d at 147 (requiring "a misrepresentation or omission of material fact which the defendant knew to be false" (citation modified)); *Hassan v. Yusuf*, 944 N.E.2d 895, 910 (Ill. App. Ct. 2011) (requiring "knowledge by defendant that the statement is false"), and thus both states' common law requires the same pre-sale knowledge as California. So too for claims under the ICFA: Under Illinois law, to state a claim under the ICFA, a plaintiff must plead: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th Cir. 2013) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)).

The Court's analysis as to pre-sale knowledge under California law applies with even greater force to Plaintiffs' fraud-based claims under New York and Illinois law, because the FAC's sole specifically pleaded customer complaint does not clearly pre-date the New York

34

Plaintiff's purchase and definitively post-dates the Illinois Plaintiff's purchase. *Compare* FAC ¶ 54 (citing consumer complaint submitted in "April 2023"), *with id.* ¶ 5 (alleging only that New York Plaintiff purchased Yoto Mini "in 2023"), *and id.* ¶ 6 (alleging that Illinois Plaintiff purchased Yoto Mini in "September 2022"). Even if this complaint pre-dated both sales, however, it would be insufficient to state a fraud-based claim under New York or Illinois law given the other deficiencies discussed above. *See, e.g.*, *Stern v. Electrolux Home Prods., Inc.*, No. 22-cv-03679, 2024 WL 4297656, at *3 (E.D.N.Y. Sept. 26, 2024) (dismissing fraudulent concealment claim because "two complaints are insufficient to allege[] pre-sale knowledge of the alleged defect"); *Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 WL 374145, at *11-12 (N.D. Ill. Feb. 1, 2016) (dismissing ICFA claim for failure to plead pre-sale knowledge where plaintiff's general allegation that it was "industry standard, including at [defendant], to perform a number of presale tests" on product, and allegation of "aggregated data, including warranty claims and customer complaints" were "conclusory and d[id] not establish that [defendant] had knowledge of the alleged defect at the time of sale"); *Cho v. Hyundai Motor Co.*, 636 F. Supp. 3d 1149, 1167, 1169 (C.D. Cal. 2022) (dismissing ICFA claim where, among other reasons, "awareness of a few customer complaints does not establish knowledge of an alleged defect," and plaintiffs did not "allege facts establishing that these consumer complaints were 'more than a blip on defendants' radar" (citation modified) (first quoting *Baba v. Hewlett-Packard Co.*, No. C 09-05946, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011); and then quoting *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-cv-01298, 2021 WL 62502, at *6 (C.D. Cal. Jan. 4, 2021))).

Therefore, Plaintiffs' Illinois common-law fraud claim and ICFA claim must be dismissed. The Court has already held that Plaintiffs' New York common-law fraud claim must be dismissed for failure to allege manifestation of the Defect; thus, failure to allege pre-sale knowledge is an independent basis to dismiss that claim.

C.        **Failure to Plead Breach of Warranty and CLRA Claims**

Yoto next moves to dismiss Plaintiffs' breach of warranty claims and their CLRA claims for several additional and independent reasons: first, Yoto contends that Plaintiffs failed to provide sufficient pre-suit notice for these claims, Br. at 21-23; second, Yoto contends that Plaintiffs failed to allege that they presented their Yoto Minis for repair or replacement under the Product Guarantee, as required for Plaintiffs' express warranty claims, *id.* at 23; and third, Yoto contends that the Illinois Plaintiff and California Plaintiff are not in contractual privity with Yoto, as required for Plaintiffs' implied warranty claims under those states' laws, *id.* at 23-24. Having dismissed most of Plaintiffs' warranty and CLRA claims on other grounds, the Court need not address many of these additional arguments. The Court will instead address only Yoto's argument as to Plaintiffs' claim under Illinois law for breach of the implied warranty of merchantability, which Yoto has not moved to dismiss on any other basis. The Court agrees with Yoto that this claim must be dismissed.

In Illinois, "[t]o state a claim for breach of the implied warranty of merchantability, a plaintiff must allege '(1) a sale of goods, (2) by a merchant of those goods, and (3) the goods were not of merchantable quality.'" *Bayer HealthCare LLC v. Aeropres Corp.*, 767 F. Supp. 3d 810, 818 (N.D. Ill. 2025) (quoting *Brandt v. Boston Sci. Corp.*, 792 N.E.2d 296, 299 (Ill. 2003)). The cause of action also "requires privity of contract" between buyer and seller. *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021); *see also id.* at 610 (dismissing plaintiffs' implied warranty claim on other grounds, but explaining that it "would have been defeated right out of the gate, as they lacked privity of contract with [defendant], having bought the [product] from a dealer"). Although Yoto has not moved to dismiss the Illinois Plaintiff's breach of express warranty for lack of privity, Illinois law also requires privity of contract for that claim, *see Manley v. Hain Celestial Grp.*, 417 F. Supp. 3d 1114, 1125 (N.D. Ill. 2019) ("[A] claim for breach of express

36

warranty, like a claim for breach of implied warranty, requires privity of contract."), and thus the Court will include the Illinois Plaintiff's breach of express warranty claim in this analysis as well.

The Illinois Plaintiff did not buy her Yoto Mini from Yoto: she bought it from Amazon. FAC ¶ 6. Accordingly, she lacks privity with Yoto. *See Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022) (dismissing implied warranty claim where plaintiff purchased Ford vehicle from Ford dealership but "had no contact with Ford [itself]," because "[t]here is no contractual privity between a manufacturer and a person who buys from an independent dealer"); *Slafter v. Haier US Appliance Sols., Inc.*, 605 F. Supp. 3d 1102, 1105, 1108 (S.D. Ill. 2022) (same, where plaintiff purchased Haier air conditioner from "a local Walmart store"). Plaintiffs do not contend otherwise in opposition to Yoto's motion. Rather, they argue that "an exception to the privity requirement applies" here, because Yoto "was aware of remote customers' requirements that products work safely" and knew that those customers expected Yoto products to meet certain standards. Opp. at 22. The Court disagrees that this exception, known as the third-party beneficiary exception, is applicable to the facts pleaded here.

In Illinois, the third-party beneficiary exception applies to an implied warranty claim where "the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Frank's Maint. & Eng'g., Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980); *accord Rodriguez v. Progressive Treatment Sols., LLC*, No. 25-cv-01019, 2026 WL 710930, at *13 (N.D. Ill. Mar. 13, 2026). The exception requires a manufacturer's specific knowledge not just of who the end-purchaser is, but also of what the end-purchaser uniquely requires. For example, in *Frank's*, a manufacturer of motorcycle front fork tubes (Frank's) ordered steel tubing for that purpose from an intermediary. *Frank's*, 408 N.E.2d at 405. The intermediary, in turn, ordered

37

the tubing from a supplier, Leland, and directed that Leland ship the tubing directly to Frank's. *Id.* When Leland delivered the tubing to Frank's, it was "cracked, useless and dangerous for the high-stress purposes for which it was ordered." *Id.* The Illinois Appellate Court held that Frank's could sue Leland, despite lacking privity, because it had met the third-party beneficiary exception: "Leland was clearly aware that the order from [the intermediary] was on behalf of [Frank's] and it shipped the goods not to [the intermediary] but directly to [Frank's]." *Id.* at 412. Moreover, the court held that Leland knew of Frank's "purpose and requirements" and had "manufactured or delivered the goods specifically to meet those requirements." *Id.*

Plaintiffs do not allege similar facts here. Rather, Plaintiffs allege (and argue, *see* Opp. at 22) that Yoto knew that they required the Yoto Mini to "work safely" and knew that they "generally expected" that the Yoto Mini would "meet minimum standards." FAC ¶ 165. Those are allegations of requirements and expectations that all consumers have for products they buy — but "[t]he third-party-beneficiary exception is about the requirements of a particular customer, not the requirements of consumers generally." *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 977-78 (N.D. Ill. 2025) (dismissing implied warranty claim for lack of privity where plaintiff bought incomplete vehicle chassis from dealership rather than from defendant manufacturer, notwithstanding plaintiff's contention that manufacturer generally "knew and understood the [chassis] would be utilized by consumers as a motorhome" (citation omitted)). In other words, "[w]hat [Plaintiffs] effectively propose is that all purchasers of any mass-produced product are the intended third-party beneficiaries of contracts between the manufacturer and retailers for the supply of the product." *Graham v. Am. Honda Motor Co.*, 806 F. Supp. 3d 758, 785 (N.D. Ill. 2025). The Court rejects that proposition. *See id.* at 784-86 (dismissing implied warranty claim for lack of privity where plaintiffs "purchased their lawnmower from a Home Depot store, rather than directly from Honda, and have not suggested theirs was a custom

38

design" or "alleged Home Depot and Honda *intended* that Home Depot's customers should have a right to sue under any contract between the two"); *Progressive Treatment Sols.*, 2026 WL 710930, at *12-13 (dismissing express and implied warranty claims for lack of privity where plaintiff "purchased the . . . products from [a] dispensary, not [d]efendants" and "ma[de] no allegations that [d]efendants knew his identity, his purpose, or his particular requirements").

In the FAC, Plaintiffs alternatively allege — but, in their opposition brief, do not argue — that the Illinois Plaintiff purchased her Yoto Mini "directly from" Yoto because she bought it "through Amazon's Yoto store which is managed by [Yoto]," and additionally that Amazon is "an agent of [Yoto]." FAC ¶ 162. These are conclusory legal theories couched as, but unsupported by, factual allegations, and therefore the Court does not accept them as true and need not address them here. *Iqbal*, 556 U.S. at 678. However, the Court notes that Illinois law appears to foreclose both alternative theories. First, "Illinois courts have made clear that . . . goods mass-produced and sold at retail to a third-party who is not a beneficiary of the manufacturer-seller contract" are not considered directly sold by the manufacturer. *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 643 (N.D. Ill. 2022). In any event, Plaintiffs appear to abandon their theory that a purchase through Amazon constitutes a direct purchase through Yoto, as they argue elsewhere here that the California Plaintiff need not provide pre-suit notice for her warranty claims given that she purchased from Amazon, which renders Yoto a "remote manufacturer[]." Opp. at 18. And second, "courts in [Illinois] have repeatedly observed that no Illinois authority permits a plaintiff to 'skirt the privity requirement' for implied warranty claims by alleging an agency relationship between the manufacturer and the direct seller." *Graham*, 806 F. Supp. 3d at 784 (citation omitted).

Therefore, because the Illinois Plaintiff is not in privity with Yoto, and because no exception to the privity requirement applies, the Illinois Plaintiff cannot maintain a cause of

action against Yoto for breach of the implied warranty of merchantability under Illinois law. That claim must, accordingly, be dismissed. The Court has already dismissed the Illinois Plaintiff's claim for breach of express warranty for failure to plead manifestation of the Defect, *see supra* Section II.A.3, but lack of privity is an additional and independent basis to dismiss that claim.

### D.    Failure to Plead Unjust Enrichment

Finally, Yoto moves to dismiss Plaintiffs' unjust enrichment claims under New York, California, and Illinois law, because the Product Guarantee governs Plaintiffs' relationship with Yoto, and because Plaintiffs have adequate remedies at law that render these claims duplicative of their other claims. Br. at 24-26. Yoto argues that Plaintiffs' unjust enrichment claim fails under California and Illinois law for the additional reason that those two states do not recognize unjust enrichment as an independent cause of action. *Id.* at 26 n.14. Plaintiffs counter that neither the Product Guarantee nor their remedies at law provide the specific relief they seek through this claim — that is, disgorgement of profits — and that their unjust enrichment claims are properly brought in the alternative to their other claims. Opp. at 23-25. Plaintiffs further argue that, under California law, the existence of a warranty does not doom an unjust enrichment claim, because that claim is not merely quasi-contractual in California, as it is in other states. *Id.* at 25-26.

The Court has already dismissed Plaintiffs' unjust enrichment claim under New York law, *see supra* Section II.A.1, and thus need not address Yoto's arguments here with respect to New York law. The Court agrees with Yoto that Illinois law does not permit an independent claim for unjust enrichment, and therefore that the claim must be dismissed; the law in California is less certain, but still requires dismissal. Accordingly, the Court will separately address each state's law on this issue, dismiss each claim, and decline to address Yoto's remaining arguments.

### 1. Illinois Law

"Under Illinois law, there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Rather, "it [is] 'a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence[.]" *Id.* (quoting *Charles Hester Enters. v. Ill. Founders Ins. Co.*, 484 N.E.2d 349, 354 (Ill. App. Ct. 1985)). Thus, "[w]hen a claim of unjust enrichment arises out of the same conduct alleged in another claim, the unjust enrichment claim stands or falls with the other claim." *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Plaintiffs do not cite cases to the contrary or otherwise address this issue, *see* Opp. at 23-26, which is fatal to their unjust enrichment claim under Illinois law.

Indeed, the FAC states that Plaintiffs' "unjust enrichment claims are premised in part on [Yoto]'s pre-sale activities and are unrelated to their post-sale obligations to provide repairs." FAC ¶ 183. But the Court has already found that Plaintiffs insufficiently pleaded their claims with respect to Yoto's pre-sale conduct under Illinois law. *See supra* Section II.B.2.[6] Thus, Plaintiffs' unjust enrichment claim based on the same allegations fails and must be dismissed. *See, e.g.*, *Hutson v. Conagra Brands, Inc.*, No. 21-cv-04147, 2022 WL 4647251, at *8 (C.D. Ill. Sept. 30, 2022) (dismissing unjust enrichment claim "premised on the conduct underlying [plaintiff's] claims for fraud and misrepresentation" already dismissed); *Pickens v. Mercedes-Benz USA, LLC*, No. 20 C 3470, 2021 WL 5050289, at *6 (N.D. Ill. Nov. 1, 2021) (dismissing

---

[6] To be sure, the FAC's statement that its claim is based only "in part" on Yoto's pre-sale activities leaves room for the possibility that it is also based "in part" on certain other alleged activities. But "the Court is not required to either speculate or puzzle out Plaintiffs' allegations in such a way that the Court would be effectively pleading [their] claim for them." *Swanhart v. New York*, No. 20-cv-06819 (NSR), 2022 WL 875846, at *9 (S.D.N.Y. Mar. 24, 2022). In any event, the Court has dismissed *all* of Plaintiffs' claims here, and so there is no remaining conduct upon which Plaintiffs may premise their unjust enrichment claims.

41

unjust enrichment claim based on defendant's "alleged failure to tell [plaintiff] that his sunroof window might shatter," which allegation "underlies all [plaintiff's] claims" that the court had already dismissed); *Desparrois v. Chevron N. Am., Inc.*, No. 25-cv-00551, 2026 WL 516933, at *10 (S.D. Ill. Feb. 25, 2026) (dismissing unjust enrichment claim as "'tied to the fate' of [plaintiff's] claims for breach of express and implied warranties and the ICFA" already dismissed (quoting *Benson*, 944 F.3d at 648)).

### 2. California Law

The Court moves next to the California unjust enrichment claims.  In *Astiana v. Hain Celestial Group*, the Ninth Circuit held that, "[i]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.' . . . Rather, [it] describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'"  783 F.3d 753, 762 (9th Cir. 2015) (first quoting *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. Ct. App. 2010); and then quoting 55 Cal. Jur. 3d Restitution § 2).  Two years later, in a non-precedential opinion, the Ninth Circuit wrote that the California Supreme Court "ha[d] clarified California law [by] allowing an independent claim for unjust enrichment to proceed in an insurance dispute."  *Bruton v. Gerber Prods. Liability*, 703 F. App'x 468, 470 (9th Cir. 2017).  In light of these conflicting opinions, one of which does not clearly displace the other, California courts have found that "California law on unjust enrichment remains somewhat unclear."  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022); *accord Shipley v. Meta Platforms, Inc.*, No. 25-cv-03324, 2025 WL 3683868, at *13 (N.D. Cal. Dec. 18, 2025).

Regardless of whether California law permits unjust enrichment as a standalone claim, however, Plaintiffs' claim here fails for largely the same reason it failed under Illinois law: it is premised on factual allegations concerning Yoto's purportedly fraudulent conduct that the Court

42

has already found insufficient to state any fraud-based claim.  *See Hawkins*, 729 F. Supp. 3d at 1029 (dismissing unjust enrichment claim "premised on the same factual allegations as" plaintiffs' claims under the UCL, FAL, and CLRA, which had been dismissed); *Wong v. Am. Honda Motor Co.*, No. 19-cv-10537, 2022 WL 3696616, at *12 (C.D. Cal. June 21, 2022) (dismissing unjust enrichment claim where court "has dismissed the other causes of action in the FAC, [such that] there [are] no grounds for recovery on an unjust enrichment theory"); *Hammerling*, 615 F. Supp. 3d at 1096 (dismissing unjust enrichment claim where "[p]laintiffs fail[ed] to plead with particularity that [defendant] committed an actionable misrepresentation or omission").  Therefore, Plaintiffs' unjust enrichment claim under California law is dismissed.

## III.    Leave to Amend

Although Plaintiffs perfunctorily request leave to amend the FAC in the event of dismissal, *see* Opp. at 26, they do not indicate how amendment would address the deficiencies of their pleadings.  Plaintiffs have already amended their complaint once in response to an earlier-filed motion to dismiss that contained many of the same arguments raised here and thus have had ample opportunity to address the deficiencies Yoto raised.  *See* Dkts. 23-24.  Accordingly, Plaintiff's request to amend is denied.  *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025) (affirming district court's denial of leave to amend where plaintiff had notice of the deficiencies of its complaint through a premotion letter and "ample opportunity" to address them).

## CONCLUSION

For the foregoing reasons, the motion to dismiss under Rule 12(b)(1) is DENIED, and the motion to dismiss under Rule 12(b)(6) is GRANTED in its entirety. The First Amended Complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 33 and to CLOSE the case.

Dated: April 16, 2026
      New York, New York

                          SO ORDERED.

                          _Jennifer Rochon_
                          JENNIFER L. ROCHON
                          United States District Judge